**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. DAVID KANNAR, | No. C-08-5505 MMC |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO TRANSFER; DENYING DEFENDANTS' MOTION TO TRANSFER** |
| v. | |
| ALTICOR, INC., et al., | |
| Defendants. / | |

Before the Court are defendants' Motion to Transfer Venue to the United States District Court for the Western District of Michigan, filed January 30, 2009, and plaintiff's Opposition to Defendants' Motion/Cross-Motion to Transfer to the Central District of California, filed February 13, 2009. Having read and considered the papers filed in support of and in opposition to the motions, the Court deems the matters appropriate for decision thereon, hereby VACATES the hearing scheduled for April 10, 2009, and rules as follows.

**BACKGROUND**

Plaintiff alleges he is the owner of United States Patent Number 7,425,342 ("'342 patent"), entitled "Odourless Garlic Supplement Comprising an Enteric Coating and a Deodorising Layer." (See Compl. ¶ 12 & Ex. 1.) Plaintiff further alleges that defendants "have infringed and continue to infringe" the '342 patent by making, using, offering to sell in the United States, and/or importing into the United States "garlic supplements" covered by

the '342 patent.  (See id. ¶ 13.)

Defendants, by their motion, seek an order transferring the instant action to the Western District of Michigan, in which district each defendant maintains its principal place of business.  In response, plaintiff requests that the action be retained in this district, but argues that if a transfer is deemed appropriate, such transfer should be to the Central District of California.

**DISCUSSION**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  As a threshold matter, the moving party must show that the transferee forum is one in which the action might have been brought.  See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).  The moving party must then demonstrate that a transfer of venue would promote the convenience of parties and witnesses and the interests of justice.  See § 1404(a); Decker Coal Co. V. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Here, the parties do not dispute that the action could have been brought in either the Western District of Michigan or the Central District of California.  Defendants reside in the Western District of Michigan, maintain a manufacturing facility in the Central District of California, and sell the accused product in both districts.  (See Mitchell Decl. ¶¶ 4, 5, 7, 8; Jenkins Decl. Ex. I); see also 28 U.S.C. § 1400(b) (providing "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business").

"[I]n its determination whether transfer is appropriate in a particular case," a district court must "weigh multiple factors" in addition to the convenience of parties and witnesses. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).  Among the additional factors identified by the Ninth Circuit are:

(1) the location where the relevant agreements were negotiated and executed, (2)

the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

See id. at 498-99. "[A]dministrative difficulties flowing from court congestion" may also be considered. See Decker Coal Co., 805 F.2d at 843.

**A.  Convenience of Witnesses**

The convenience of witnesses "is often the most important factor considered by the court when deciding a motion to transfer for convenience." See Steelcase v. Haworth, 41 U.S.P.Q. 2d 1468, 1470 (C.D. Cal. 1996). "In balancing the convenience of the witnesses, primary consideration is given to third party, as opposed to employee witnesses," see Royal Queentex Enters. v. Sara Lee Corp., No. C-99-4787 MJJ, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000); Brandon Apparel Group, Inc. v. Quitman Mfg. Co., 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999), and the Court should consider "not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case," see Steelcase, 41 U.S.P.Q. 2d at 1470.

Here, each party has identified numerous witnesses whom it expects to call to testify at trial. Significantly, however, all of the witnesses identified by defendants are employees of defendants, whose convenience, as noted, does not receive "primary consideration." See Royal Queentex Enters., 2000 WL 246599, at *6. By contrast, plaintiff has pointed to eight non-party witnesses whom plaintiff plans to call to testify. Although defendants dispute the relevance of some of the testimony to be offered by such witnesses, the Court, as set forth below, finds the convenience of such witnesses weighs heavily in favor of transfer to the Central District of California.

**1.  Non-Party Witnesses**

At the outset, the Court notes that two of the non-party witnesses identified by plaintiff, Ray Durrant ("Durrant") and David Leech ("Leech"), reside in Australia and would provide testimony concerning, among other things, the "conception and reduction to

1 practice of the invention." (See Kannar Decl. ¶¶ 7, 9.) Defendants do not dispute that such testimony would be relevant. Both this district and the Central District of California would be equally convenient for Durrant and Leech, and significantly more convenient than the Western District of Michigan.[1]

Next, three of the non-party witnesses identified by plaintiff, Terry Tuttle ("Tuttle"), Marissa O'Donnell ("O'Donnell"), and Jim Rouffs ("Rouffs") are former employees of defendants who reside in the Central District of California. According to plaintiff, Tuttle and O'Donnell would testify about the former relationship between plaintiff's company and defendants and, in particular, the "technology that the [d]efendants obtained from [plaintiff]" (see Kannar Decl. ¶¶ 4, 7); Rouffs would testify about "the formulation and manufacture of the accused product" (see id. ¶ 12) and, in particular, "how the patented invention was incorporated into [d]efendants' tablets" (see Pl.'s Reply at 4:21-24). Defendants argue such witnesses' testimony would be irrelevant, as none has worked for defendants in the period after the issuance of the '342 patent on September 16, 2008, and only activities occurring after that date can give rise to a claim of infringement. (See Atkins Decl. ¶¶ 3-5); see also Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1366 (Fed. Cir. 1998) (holding no infringement occurs "until the product is used, sold, or offered for sale in the United States during the term of the patent"). As plaintiff points out, however, events occurring prior to the issuance of a patent are not categorically irrelevant. Here, plaintiff has identified the relevance of such witnesses' testimony to the question of infringement.[2]

The remaining non-party witnesses identified by plaintiff, Wayne McMaster

---

[1] The Court finds unpersuasive defendants' argument that little significance should be given the additional time it would take such witnesses to travel to the Western District of Michigan. As the Federal Circuit has noted, "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for food and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." See In re TS Tech USA Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal quotation and citation omitted; alterations in original).

[2] The Court likewise finds unpersuasive defendants' argument that O'Donnell's testimony necessarily will be duplicative of Tuttle's merely because O'Donnell worked as an assistant to Tuttle.

1  ("McMaster"), Shyama Jayasal ("Jayasal"), and Nick Diamontopoulous
2  ("Diamontopoulous"), are residents of Australia. Plaintiff states that McMaster and Jayasal,
3  both of whom are patent attorneys, would testify in rebuttal to defendant's equitable
4  estoppel defense, and that Diamontopoulous would testify about "the farming and
5  production related to [d]efendants' Garlic Heart Care supplements" and the business
6  relationship between plaintiff's company and defendants. (See Kannar Decl. ¶ 8.)
7  Defendants assert that their equitable estoppel defense relates only to the prosecution of
8  the '342 patent before the United States Patent and Trademark Office, which prosecution
9  was undertaken by an attorney located in Akron, Ohio (see Leitenberger Decl. II ¶ 3) and
10 that Diamontopoulous' testimony would be irrelevant to any issue in the action. Although
11 plaintiff responds that "all of the witnesses from Australia" can provide "evidence related to
12 the priority date of the patent and conception and reduction to practice of the invention"
13 (see Pl.'s Reply at 4:9-12), plaintiff provides no additional showing as to the anticipated
14 testimony of these three witnesses.

15  In sum, plaintiff has identified at least five relevant non-party witnesses, three of
16 whom reside in the Central District of California, and two of whom reside in Australia and
17 could more conveniently travel to either this district or the Central District of California than
18 to the Western District of Michigan. Moreover, defendant has identified no non-party
19 witness for whom the Western District of Michigan would be a convenient forum.

20  Accordingly, the convenience of the non-party witnesses weighs heavily in favor of
21 transfer to the Central District of California.

22  **2.    Party Witnesses**

23  The only party witness identified by plaintiff is plaintiff himself, who resides in
24 Australia. For plaintiff, both this district or the Central District of California would be equally
25 convenient and more convenient than the Western District of Michigan.

26  The Court next considers the convenience of the party witnesses identified by
27 defendants. In that regard, the Court first notes that two witnesses identified by
28 defendants, Ruo Huang ("Huang") and Steve Trank ("Trank") reside in the Central District

1  of California and could testify, respectively, about the "product development" and the
2  "manufacturing process and tableting" of the accused product. (<u>See</u> <u>id.</u>) Plaintiff does not
3  dispute that such testimony would be relevant.

4  Two other witnesses identified by defendants, Todd Krause ("Krause"), Director of
5  Sales Administration, and David Bartlett ("Bartlett"), Director of the Finance Department,
6  reside in the Western District of Michigan and "may" testify about damages and "the sales
7  of the accused products." (<u>See</u> Mitchell Decl. ¶ 12.) Plaintiff argues that such testimony
8  would be of little relevance, for the reason that the issue of damages likely will be resolved
9  through expert testimony, and, in any event, Krause's testimony will likely be duplicative of
10 Bartlett's testimony. Defendants respond, however, that Krause and Bartlett's testimony
11 also will concern the commercial success of the accused product as it relates to
12 obviousness. Further, on the record before it, the Court cannot find their testimony
13 necessarily will be duplicative.

14 The next two witnesses identified by defendants, Brooke Bicknell ("Bicknell"), Senior
15 Brand Manager, and Rebecca Stockton ("Stockton"), Senior Brand Manager, reside in the
16 Western District of Michigan and "may" testify about the "marketing of the accused
17 product." (<u>See</u> Mitchell Decl. ¶ 12.) Plaintiff argues such testimony is irrelevant because
18 the marketing of the accused product is not at issue herein, and, in any event, given that
19 these two witnesses have the same job title, their testimony likely would be duplicative. In
20 response, defendants assert that Bicknell and Stockton likewise "may" offer testimony as to
21 damages, sales, and obviousness. Defendants do not explain, however, how the testimony
22 of these two witnesses would differ from that of Krause and Bartlett, or from that of each
23 other.

24 Two additional witnesses identified by defendants, Robin Dykhouse ("Dykhouse")
25 and David Groh ("Groh"), maintain offices in both the Central District of California and the
26 Western District of Michigan and "may" testify about the "formulation, product development,
27 and manufacture of the accused product." (<u>See</u> <u>id.</u>) Plaintiff does not argue such
28 testimony would be irrelevant but asserts the convenience of such witnesses favors

6

1  transfer to the Central District of California.  In particular, plaintiff argues that Dykhouse and
2  Groh likely reside in the Central District of California because, if they resided in Michigan,
3  defendants would have so stated.  In response, defendants do not address the matter of
4  such witnesses' residence, arguing only that they would not be inconvenienced by a
5  transfer to the Western District of Michigan and would be inconvenienced by retention of
6  the action in the Northern District of California.

7  In sum, there are four relevant party witnesses for whom the Central District of
8  California would be the most convenient forum, and one relevant party witness for whom
9  either this district or the Central District of California would be most convenient.  By
10 contrast, there are, at best, four party witnesses who would find the Western District of
11 Michigan most convenient, and, even if all four of those witnesses could offer relevant
12 testimony that is not duplicative, the number of party witnesses who would find a California
13 forum most convenient exceeds the number who would find a Michigan forum most
14 convenient.

15 Accordingly, the convenience of the party witnesses weighs in favor of transfer to the
16 Central District of California.

**B.     Remaining Factors**

    **1.     Plaintiff's Choice of Forum**[3]

Ordinarily, a plaintiff's choice of forum is accorded substantial deference.  See Decker Coal Co., 805 F.2d at 843.  Where, as here, however, the plaintiff is a resident of a foreign country, such deference is greatly reduced.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981).  Moreover, even where a plaintiff has chosen a forum close to his place of residence, in actions alleging a claim of patent infringement, such a choice is accorded little deference where the "center of the accused activity" is outside the chosen forum; the "center of the accused activity" is the district in which the defendant "is alleged to

---

[3] Because the action does not involve an agreement, the first Jones factor is inapplicable and, because the action arises solely under federal law, the second Jones factor likewise is inapplicable.

have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product."  See, e.g., Sorensen v. Daimler Chrysler AG, No. C 02-4752 MMC, 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003) (collecting cases).  Here, the center of the accused activity is either the Western District of Michigan, where decisions concerning the sales and marketing of the accused product were made (see Mitchell Decl. ¶ 12), or the Central District of California, where the accused product was developed and manufactured (see Kannar Decl. ¶ 5).

Accordingly, plaintiff's choice of forum is entitled to little to no deference, and, consequently, this factor weighs, at best, only slightly against transfer.

### 2. The Parties' Contacts with the Forum

Neither party has extensive contacts with this district.  Plaintiff states, however, he traveled to San Francisco "an average of three times per year" in 2007 and 2008, has visited defendants' manufacturing facility in the Central District of California five times,[4] and has been to Michigan on only one occasion.  (See Kannar Decl. ¶ 2, 3, 5.)  Although defendants have substantial contacts with the Western District of Michigan, where the principal place of business of each defendant is located, defendants also have substantial contacts with the Central District of California, where the accused product is manufactured.  (See Mitchell Decl. ¶¶ 4, 5, 7; Kannar Decl. ¶ 3.)

Accordingly, this factor weighs slightly in favor of transfer to the Central District of California.

### 3. Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum

Plaintiff does not assert that any of his contacts with this district are related to the instant action.  Accordingly, this factor favors weighs in favor of transfer either to the Western District of Michigan or the Central District of California.

### 4. Costs of Litigation

The parties dispute the relative cost of transportation to and lodging in each of the

---

[4]Plaintiff further states, however, that he "no longer travels" to Southern California. (See Kannar Decl. ¶ 5.)

8

1  potential forums. From the evidence presented herein, however, it would appear that such
2  costs vary widely depending on the criteria used to select flights and accommodations.
3  (See, e.g., Leitenberger Decl. II ¶ 21; Jenkins Decl. II ¶ 14.)  In any event, as plaintiff points
4  out, defendants collectively constitute a multi-billion dollar business, whereas plaintiff is an
5  individual. Consequently, defendants have a greater ability to absorb transportation and
6  lodging costs than does plaintiff. See, e.g., Healthtrac Corp. v. Caterpillar, Inc., No. C 05-
7  2727 MHP, 2005 WL 2811765, at *4 (holding, "[i]n analyzing the convenience of a forum,
8  the court may also consider the parties' relative ability to afford the expenses of litigating in
9  that forum"); Royal Queentex Enters., 2000 WL 246599, at *6 (holding, where plaintiff
10 company had eight employees, "[t]o the extent [defendant] Sara Lee would be better able
11 to bear the travel costs, this factor weighs against transfer").
12         Accordingly, this factor weighs in favor of retention of the action in the Northern
13 District or transfer to the Central District of California, either of which, according to plaintiff,
14 would entail fewer costs for him than if the action were transferred to the Western District of
15 Michigan.

**5.    The Availability of Compulsory Process**

17         The only witnesses who either party asserts may be unwilling to testify are the three
18 former employees of defendants identified by plaintiff, specifically, Tuttle, O'Donnell, and
19 Rouffs. As noted, all three reside in the Central District of California, and, thus, all three
20 may be subpoenaed to testify at trial either in the Central District of California or in this
21 district. See Fed. R. Civ. P. 45(c)(3)(A)(ii). None of such witnesses, however, may be
22 compelled to testify in the Western District of Michigan.
23         Accordingly, this factor weighs in favor of retention of the action in this district or
24 transfer to the Central District of California.

**6.    Ease of Access to Sources of Proof**

26         The parties agree that documents potentially relevant to the action are located in
27 both the Western District of Michigan and the Central District of California, and not in this
28 district. Accordingly, although this factor generally is of little weight "[g]iven technological

9

1  advances in document storage and retrieval," see, e.g., Brackett v. Hilton Hotels Corp., No.
2  C 08-2100 WHA, 2008 WL 2632675, at *7 (N.D. Cal. June 30, 2008), in this instance it
3  favors transfer to either the Western District of Michigan or the Central District of California.

**7.     Administrative Difficulties Flowing from Court Congestion**

Defendants have presented evidence that the average times from filing to termination by jury verdict for patent cases in the three forums at issue are, respectively, 31.8 months in the Western District of Michigan, 35.5 months in the Northern District of California, and 36.1 months in the Central District of California.  (See Bartlett Decl. Exs. R-T.)  On the other hand, the average times from filing to termination by summary judgment are 19.1 months in the Central District of California, 23.4 months in the Western District of Michigan, and 31.1 months in the Northern District of California.  (See id.)

Accordingly, this factor weighs in favor of transfer to either the Western District of Michigan or the Central District of California.

**C.     Conclusion**

In sum, the most probative of the factors discussed above, convenience of both the non-party and party witnesses, weigh in favor of transferring the instant action to the Central District of California, and of the remaining factors, a greater number favor transfer to the Central District of California than either retention of the action in this district or transfer to the Western District of Michigan.  Significantly, no factor weighs in favor of transfer to the Western District of Michigan that does not also weigh in favor of transfer to the Central District of California.  Accordingly, the Court finds transfer of the instant action to the Central District of California is appropriate.

//
//
//
//
//
//

**CONCLUSION**

For the reasons stated above:

1. Defendants' motion to transfer to the Western District of Michigan is hereby DENIED.

2. Plaintiff's alternative cross-motion to transfer to the Central District of California is hereby GRANTED, and the above-titled action is hereby ordered TRANSFERRED to the Central District of California.

**IT IS SO ORDERED.**

Dated: April 9, 2009

MAXINE M. CHESNEY
United States District Judge